Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| López Brother's Construction, Inc.<br><br>Apelante<br><br><br>vs.<br><br><br>Municipio de Barranquitas<br><br>Apelado | TA2026AP00153 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de Comerío<br><br>Civil Núm.: BQ2019CV00055<br><br>Sobre: Incumplimiento de Contrato; Daños Contractuales; Cobro de Dinero; Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de abril de 2026.

Comparece ante nos, López Brother's Construction, Inc. (López Construction o Apelante), mediante recurso de apelación, en el que solicita la revocación de la Sentencia emitida y notificada el 15 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Comerío (TPI). Mediante el referido dictamen, el foro de instancia declaró No Ha Lugar a la Demanda presentada por el Apelante.

Examinada la solicitud de autos, la totalidad del expediente, así como el estado de derecho aplicable, modificamos la Sentencia apelada, y así modificada, confirmamos, por los fundamentos que expondremos a continuación.

**I.**

El caso de epígrafe tuvo su génesis el 29 de marzo de 2019, cuando López Construction presentó una Demanda en contra del Municipio de Barranquitas (Municipio o Apelados) sobre

incumplimiento de contrato, cobro de dinero y daños y perjuicios. Mediante esta, alegó que el 9 de noviembre de 2015, suscribió un Contrato de Construcción por el término de un (1) año y quince (15) días, con el Municipio para la reconstrucción del Estadio Municipal Pablo Marrero Ortiz. Explicó que, luego de iniciadas las labores de construcción, el 20 de junio de 2016, el Municipio redujo los trabajos de construcción de $2,527,895.00 a $1,441,070.50 sin su consentimiento. Posteriormente, se les informó que el Municipio no contaba con los fondos totales para pagar por la obra, debido a una paralización de los fondos, atribuible a la situación precaria del Banco Gubernamental de Fomento (BGF). Por lo que, a solicitud del Municipio, se vieron obligados a reprogramar ciertas obras. Una vez reanudado el proyecto, el 24 de julio de 2017, las partes suscribieron la Enmienda K del Contrato en el que se identificó una nueva fuente de ingresos para el pago de la obra. Sin embargo, las labores fueron detenidas nuevamente por el paso del Huracán María.

Más adelante, el 15 de agosto de 2018, el Municipio le solicitó a los Apelantes que remitieran un informe de los trabajos pendientes y su disponibilidad para culminar el proyecto. En respuesta, el 20 de septiembre de 2018, López Construction presentó una reclamación en la que hizo constar su disponibilidad para la culminación de la obra, una vez se pagara por las certificaciones pendientes. El Apelante adujo que la obra no se culminó debido a la lentitud del Municipio en su toma de decisiones. Además, señaló que el Apelado actuó mediante dolo y mala fe, toda vez que, a la fecha del otorgamiento del contrato enmendado, este no poseía los fondos para el pago de las certificaciones ante su consideración y tampoco tenían conocimiento de cuándo estarían disponibles. Su petitorio se extendió a las reclamaciones por "Extended Overhead", las

pérdidas de renta del equipo durante la paralización, las ganancias dejadas de percibir y los daños contractuales a raíz de la situación ocasionada por los actos del Municipio.

Posteriormente, el 3 de febrero de 2020, el Apelado presentó su Contestación a Demanda y Reconvención, en la que explicó que se procesaron los pagos de 23 facturas ascendientes a $1,385,096.25, conforme a lo pactado. Por otro lado, se retuvo el 10% de acuerdo a las cláusulas contenidas en el contrato. Indicó que el Municipio sufrió daños a causa de la inacción y el abandono de López Construction. Señaló que, el Apelante tampoco sometió el informe de obras pendientes según le fuera solicitado. Argumentó que las paralizaciones realizadas se solicitaron a la luz de la Ley Núm. 21-2016, conocida como Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico, la cual facultaba al Gobernador para detener cualquier obligación o compromiso de restar o proveer dinero a crédito por el BGF. Ante la paralización del financiamiento, el Municipio se vio obligado a reprogramar las actividades de construcción. Por tal motivo, insistió en que no actuó mediando mala fe.

Luego, el 18 de agosto de 2021, el Municipio presentó una Moción Informativa en la cual recogió el Acuerdo Parcial sobre Pago de Certificación Número 23, Retenido, Exceso de Pago de Arbitrios de Construcción y sobre Paralización de Subasta Pública. Mediante este acuerdo, el Apelado acordó realizar el pago pendiente de $102,963.13 correspondiente a la certificación número 23, el pago reteniendo del 10% ascendiente a $138,509.63 y el reembolso de lo pagado en exceso por concepto de arbitrios de construcción y patentes municipales ascendiente a $42,664.48.[1] Aclaró que, el pleito continúa en cuanto a la reclamación de los

---

[1] El TPI aceptó el acuerdo transaccional mediante la orden emitida el 15 de septiembre de 2021.

daños contractuales, el "Extended Overhead" acumulado desde el comienzo de la construcción de la obra, las ganancias dejadas de percibir y otras reclamaciones.

Tras varias incidencias procesales que son innecesarias pormenorizar, el 5 de julio de 2023,[2] el TPI emitió una Resolución, en la cual atendió la Moción de Sentencia Sumaria Parcial presentada por el Apelante y su correspondiente Oposición presentada por el Municipio. Determinó que aun existían asuntos en controversia que le impedían la resolución del pleito mediante la vía sumaria, a saber:

> *4. La Srta. Yamilet Guzmán Cartagena, se reunió con los representantes de López Brother's Construction, para informarles de la congelación de los fondos por parte del Banco Gubernamental de Fomento.*
>
> *5. Dicha decisión estuvo fundamentada en la Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico, Ley Núm. 21 de 6 de abril de 2016.*
>
> *10. La reprogramación de algunas de las actividades de construcción fue estipulada por las partes y aprobada por la Junta de Subastas del Municipio de Barranquitas.*
>
> *11. A pesar de que se reprogramaron algunas actividades de la construcción, López Brother's Construction Inc., dicha empresa continuó llevando a cabo determinadas actividades de la construcción que le permitieron facturar al Municipio $1,385,096.25, lo que representa alrededor de un cincuenta y cinco por ciento (55 %) del total de la obra que era de $2,527,895.*
>
> *16. Para la fecha en que se formalizó el contrato para el proyecto de construcción el Municipio contaba con los fondos y el financiamiento necesarios para desarrollar la obra.*
>
> *17. El Artículo 105 de la Ley de Moratoria le otorga inmunidad a cualquier persona por sus acciones u omisiones en su capacidad y dentro de su autoridad que surjan como resultado de las disposiciones de esta Ley. Este asunto fue atendido por medio de una resolución que emitiera el tribunal por razón de solicitud de desestimación radicada por el Municipio. (SUMAC 15). En esta se determina que será necesario dirimir mediante la observación de los testimonios la credibilidad, a los fines de determinar si a la codemandada Yamilet Guzmán le aplica la inmunidad alegada, será necesario la evaluación de los testigos*

---

[2] Notificada el 6 de julio de 2023.

*para concluir si sus actuaciones fueron constitutivas de negligencia crasa o mala fe. Resulta imposible determinar lo anterior a base de documentos presentados como anejos. Será el juicio en su fondo la oportunidad que tendrá cada parte para esbozar sus alegaciones, y el Tribunal determina si hubo un incumplimiento de contrato y por ende daños. Desde esta resolución el tribunal dispuso sobre la necesidad de celebrar vista evidenciaría en relaciona este aspecto que está vinculado a las alegaciones de incumplimiento de contrato y daños.*

*18. Bajo las disposiciones de la Ley antes citada, la codemandada, Yamilet Guzmán Cartagena, goza de inmunidad cualificada. El tribunal debe actuar conforme a la resolución final y firme antes emitida.*

En la misma, hizo constar los siguientes hechos incontrovertidos:

*1. El 9 de noviembre de 2015, el Municipio de Barranquitas y López Brothers Construction suscribieron un Contrato de Construcción titulado "Reconstrucción del Estadio Municipal Pablo Marrero Ortiz en Barranquitas", por la cantidad de $2,527,895.00.*

*2. El término acordado para la reconstrucción del Estadio Municipal fue de un (1) año y quince (15) días hasta el 30 de noviembre de 2016. Véase la cláusula VIGÉSIMA SÉPTIMA del Contrato de Construcción.*

*3. El Municipio notificó a López Brother's Construction, Inc. que, como consecuencia de la quiebra del Banco Gubernamental de Fomento, dicha institución detuvo el préstamo que había aprobado al Municipio para la realización de la obra de construcción. El hecho de esta notificación no está en controversia. Las circunstancias relacionadas a esta notificación están en controversia.*

*6. En el Artículo 203, Inciso (c) i, de la Ley, supra, se dispuso lo siguiente: i. el Banco no podrá desembolsar préstamo alguno, a menos que sea autorizado por el Gobernador. Se trata de una disposición de ley que el tribunal tomará en consideración de forma íntegra y en su contexto.*

*7. El Gobernador emitió el Boletín Administrativo Núm. OE2016-010, con fecha de 8 de abril de 2016, mediante el cual promulgó una "Orden Ejecutiva del Gobernador del Estado Libre Asociado de Puerto Rico, Hon. Alejandro García Padilla, al amparo de los Artículos 201 y 203 de la Ley Núm. 21-2016, conocida como la Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico, para declarar un periodo de emergencia para el Banco Gubernamental de Fomento para Puerto Rico, atender el desembolso de depósitos y prestamos por dicho Banco y ordenar la implementación de otras medidas razonables y necesaria para permitir a dicho*

*Banco continuar llevando a cabo sus operaciones. (Véase Orden Ejecutiva del Gobernador)*

*8. La Undécima sección de la citada Orden Ejecutiva, dispone lo siguiente:*
*"Undécima: Conforme al Artículo 203 de la Ley de Moratoria, se suspende temporalmente (a) el desembolso de todos los préstamos y adelantos y (b) el pago de todas las obligaciones garantizadas por el BGF."*

*9. El Banco Gubernamental de Fomento emitió un Comunicado a Municipios, Rama Judicial, Rama Legislativa, Universidad de Puerto Rico, Oficina del Contralor, Oficina del Contralor Electoral, Comisión Estatal de Elecciones, Oficina de Ética Gubernamental, Oficina del Fiscal Especial Independiente, con fecha de 18 de abril de 2016, en el que en el primer párrafo de la Sección II, de dicho Comunicado, se dispone lo siguiente: (Véase Comunicado del Banco Gubernamental de Fomento.)*
*"El párrafo Undécimo de la OE-2016- 10 establece que conforme al Artículo 203, (c) (i) de la Ley 21-2016, suspende temporalmente el desembolso de todos los préstamos y adelantos del BGF, así como el pago de obligaciones garantizadas por el BGF. Por consiguiente, el BGF no está autorizado a efectuar este tipo de desembolso mientras dicha normativa esté vigente."*

*12. El Municipio solicitó a López Brother's Construction, Inc. mediante carta de 15 de agosto de 2018, que le rindiera un informe sobre las obras pendiente de construcción, luego del paso del huracán María. Este hecho de considerará en el contexto de la totalidad de las comunicaciones entre las partes y la prueba que se desfile.*

*13. El 31 de marzo de 2017, el Ing. Medina le envió una carta al Contratista para que continuara los trabajos detenidos.*

*14. López Brother's Construction, Inc. no rindió el informe solicitado. (Véase admisión de la demandante a la página 13 de su Moción de Sentencia Sumaria Parcial, (Docket 93) donde indica que:*
*"Esta nunca fue una obligación del Contratista..." Este hecho se tomará en consideración en el contexto de la totalidad de las comunicaciones entre las partes y la prueba que se desfile.*

*15. El contrato formalizado entre las partes estableció ciertas penalidades contra el contratista, si este se retrasaba en la culminación de la obra. El mismo dispone en la Clausula Séptima lo siguiente:*
*"SEPTIMO: En caso de que "El Contratista" no realice los trabajos adjudicados en el término de tiempo establecido, y de no tener una prórroga debidamente autorizada por "EL MUNICIPIO", o algún documento firmado por el supervisor del proyecto que justifique cualquier atraso en la construcción, le será retenida la suma de doscientos dólares ($200) diarios de cualquier*

*suma de dinero que se le adeude o fianza como indemnización por los daños que tal demora pueda ocasionar a "EL MUNICIPIO."*

Finalmente, la vista en su fondo se llevó a cabo en las siguientes fechas: 15, 16, 18, 29 y 30 de julio de 2024; 27 de agosto de 2024; 11, 23 y 30 de septiembre de 2024 y 9 de octubre de 2024.

Empero, el 26 de septiembre de 2024, las partes sometieron una Moción Solicitando se Dicte Sentencia Parcial por Estipulación y Desistimiento con Perjuicio. Mediante esta, el Municipio desistió de la Reconvención presentada contra el Apelante. Igualmente, López Construction desistió de la reclamación instada en contra de la señora Yamilet Guzmán Cartagena, funcionaria del Municipio de Barranquitas, en su carácter personal.

Conforme a lo solicitado, el 3 de octubre de 2024, el foro primario emitió una Sentencia Parcial en la cual se aceptó el acuerdo de las partes. Consecuentemente, ordenó la celebración de una vista argumentativa para que expusieran sus argumentaciones finales.[3]

Analizada la totalidad de la prueba, el 15 de diciembre de 2025, el TPI emitió la Sentencia Final en la cual adjudicó las alegaciones sobre el incumplimiento de contrato, dolo, negligencia y los daños y perjuicios contractuales. El foro primario concluyó que los Apelantes fallaron en demostrar su causa de acción. Especificó que López Construction tuvo conocimiento de la situación precaria del Municipio y de todas formas consintió a la enmienda del contrato. Detalló que, en este caso, los Apelantes no obraron de buena fe, al negarse a entregar un informe de obras pendientes bajo la premisa de que esto no era parte del contrato. Por otra parte, sostuvo que los pagos de las certificaciones fueron realizados dentro de los términos pactados por las partes.

---

[3] Véase Minuta emitida el 11 de octubre de 2024.

Determinó que, no se puede reclamar el incumplimiento del contrato por falta de pago cuando el Municipio no tenía los fondos disponibles.

Inconforme, López Construction presentó el escrito de Apelación que nos ocupa.  En el referido escrito imputó al TPI la comisión de los siguientes errores:

1. *Erró el TPI al fundamentar su adjudicación en determinaciones de hechos que no se sostienen en la prueba documental estipulada ni en el récord probatorio.*

2. *Erró el TPI al aplicar la ley de moratoria y la situación del BGF para liberar al Municipio de su obligación contractual.*

3. *Erró el TPI al concluir que la parte apelante carecía de derecho a reclamar contra el Municipio incumplimiento de contrato, daños contractuales, negligencia y dolo.*

Presentada y estipulada la transcripción de la prueba oral, el Apelante y el Municipio presentaron sus correspondientes alegatos, el 9 de abril de 2026 y el 14 de abril de 2026, respectivamente. Contando con la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Se ha establecido que la apreciación de la prueba realizada por el tribunal sentenciador, y la credibilidad que dicho foro otorgue a la prueba, debe ser objeto de gran deferencia por los tribunales apelativos. En ausencia de circunstancias extraordinarias, o salvo instancias en que se demuestre que el tribunal apelado actuó movido por pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no deben intervenir con las determinaciones de hecho del Tribunal de Primera Instancia. *Delgado Rodríguez v. Rivera Siverio*, 173 DPR 150, 168 (2008); *Lugo v. Municipio Guayama*, 163 DPR 208, 221 (2004); *Argüello v.*

*Argüello*, 155 DPR 62, 78-79 (2001). La Regla 42.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V, establece, en lo pertinente, que "[l]as determinaciones de hecho basadas en el testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos".

Las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999). El fundamento para ello es que el tribunal de instancia es el foro ante el cual declararon los testigos y el cual tuvo la oportunidad de apreciar el comportamiento, evaluar la veracidad del testimonio y dirimir cualquier conflicto que surgiera en el proceso. *López v. Dr. Cañizares*, 163 DPR 119, 136 (2004); *Argüello v. Argüello, supra*, pág. 79; *López Vicil v. ITT Intermedia, Inc.*, 142 DPR 857, 865 (1997); *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987). La norma es especialmente importante cuando se quiere evaluar la credibilidad de un testigo, ya que el juez de instancia puede observar su comportamiento y el juez apelativo sólo tiene ante sí el récord del caso. *Trinidad v. Chade*, 153 DPR 280, 291 (2001); *Benítez Guzmán v. García Merced*, 126 DPR 302, 308 (1990).

No obstante, la norma antes expuesta no implica que los foros de instancia sean inmunes a cometer errores ni que tales determinaciones sean inmutables. Las determinaciones del juzgador, aunque respetables y merecedoras de deferencia, no son absolutas. El tribunal apelativo, en su función revisora, por vía de excepción, puede descartar las determinaciones de hechos del

Tribunal de Primera Instancia cuando éstas no representan el balance más racional, justiciero y jurídico de la totalidad de la prueba que desfiló ante dicho tribunal. Véanse, *Méndez v. Morales*, 142 DPR 26, 36 (1996); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987).

La intervención de un foro apelativo con la evaluación de la prueba testifical procede en casos en que un análisis integral de dicha prueba pueda causar en el ánimo del foro apelativo una insatisfacción o intranquilidad de conciencia tal que estremezca el sentido básico de justicia. Para revocar la determinación del foro primario, el apelante tiene que señalar y demostrar la base para ello. La parte que cuestione una determinación de hechos realizada por el foro primario debe señalar error manifiesto o fundamentar la existencia de pasión, prejuicio o parcialidad. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 D.P.R. 345, 356 (2009), citando a *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998) y *Pueblo v. Cabán Torres*, 117 DPR 645, 649 (1986).

Además, es menester mencionar que, en cuanto a la evaluación de prueba documental o pericial, los tribunales apelativos se encuentran en las mismas condiciones que los tribunales de instancia, por lo que no es aplicable la norma de deferencia judicial. Es por eso que los tribunales apelativos pueden adoptar su propio criterio en cuanto al valor probatorio de ese tipo de evidencia. *Dye-Tex P.R., Inc. v. Royal Ins. Co., P.R.*, 150 DPR 658, 662 (2000).

**B.**

El Código Civil de Puerto Rico, dispone que "[e]l contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio". 31 LPRA sec. 3371. Adicionalmente, establece que "[l]os contratos se perfeccionan por el mero consentimiento, y desde

entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 31 LPRA sec. 3375. Una vez las partes prestan su consentimiento, éstos quedarán obligados al cumplimiento de la obligación pactada, ya que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". Art. 1044 del Código Civil, 31 LPRA sec. 2994. Ese principio de libertad de contratación reconoce la autonomía de la voluntad de los contratantes. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 33 (2010); *De Jesús González v. A.C.,* 148 DPR 255, 263 (1999).

El Art. 1054 del Código Civil provee para daños derivados del incumplimiento de contrato, al disponer: "[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en solo, negligencia o morosidad, y los que de cualquier modo contravinieran al tenor de aquellas". 31 LPRA sec. 3018. Es decir, las acciones *ex contractu* se refieren a actos u omisiones voluntarios que conllevan la inobservancia de obligaciones previamente pactadas. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 909 (2012). Véase además, *Consejo de Titulares v. MAPFRE,* 208 DPR 761, 781 (2022).

Los daños y perjuicios que se podrán indemnizar son por los que responde un deudor de buena fe. 31 LPRA sec. 3024. El Art. 1060 del Código Civil de 1930, establece que en esos casos los daños son los previstos o los que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento. *800 Ponce de León v. AIG,* 205 DPR 163, 181-182 (2020). Cabe destacar que el incumplimiento de la

obligación por culpa o negligencia no acarrea un elemento de intención. El deudor incumple, no por mala fe, sino por falta de diligencia. *Id.*, a las págs.182-183.

Ahora bien, en cuanto a la indemnización por el dolo, el Código Civil dispone que el deudor responderá por todos los que conocidamente se deriven de la falta de cumplimiento de la obligación. 31 LPRA sec. 3024. Es decir, el dolo consiste en la omisión consciente, intencionada y voluntaria de eludir el cumplimiento de la obligación con conocimiento de que se realiza un acto injusto. *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 668 (1997). Así las cosas, el deudor responderá por los daños y perjuicios que se deriven de su falta de cumplimiento. *Id.* El dolo, tanto en la formación del contrato como en el incumplimiento de la obligación, corresponde a quien reclama la conducta dolosa la responsabilidad de la prueba. *Canales v. Pan American*, 112 DPR 329, 340 (1982).

## C.

"La buena administración de un gobierno es una virtud de democracia, y parte de su buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa." *Ríos v. Municipio Isabela*, 159 DPR 839, a las págs. 844-845 (2003); *Fernández & Gutiérrez v. Mun. San Juan,* 147 DPR 824, a la pág. 829 (1999); *Hatton v. Mun. de Ponce*, 134 DPR 1001, a la pág. 1005 (1994); *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 126 DPR 864, a la pág. 871 (1990). Sobre este particular, en *Cancel v. Municipio de San Juan*, 101 DPR 296, a la pág. 300 (1973), el Tribunal Supremo señaló que "[l]as distintas disposiciones estatutarias regulando la realización de obras y contratación de servicios para el Estado y sus agencias e instrumentalidades tienen por meta la protección de los intereses y

dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento". De esta manera, "[t]anto los procedimientos establecidos en las leyes como los preceptos de sana administración pública delimitados en nuestra jurisprudencia imponen un límite a la facultad del Estado para desembolsar fondos públicos". *Vicar Builders v. ELA et. al.*, 192 DPR 256 (2015). Véase además, *Jaap Corp. v. Depto. Estado et al.,* 187 DPR 730, a la pág. 741 (2013).

Al respecto, la Ley núm. 18 de 30 de octubre de 1975, según enmendada, en su Art. 1, 2 LPRA sec. 97, dispone que:

> [l]*as entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda.* [...]

Asimismo, el Art. 8.016 de la Ley de Municipios Autónomos, 21 LPRA sec. 4366, establece que "[l]os municipios mantendrán un registro de todos los contratos que otorguen, incluyendo las enmiendas a los mismos y enviarán copia de éstos y de las escrituras de adquisición y disposición de bienes a la Oficina del Contralor de Puerto Rico, conforme a las secs. 97 et seq. del Título 2 y su Reglamento".

En atención a lo anterior, el Tribunal Supremo ha interpretado y establecido los requisitos formales que deben observarse al momento de contratar con una entidad gubernamental, entiéndase, que (1) los contratos se reduzcan a escrito; (2) se mantenga un registro fiel con miras a *prima facie* establecer su existencia; (3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencias, y (4) se acredite la certeza de tiempo, esto es, haber sido realizado y otorgado 15 días antes.

*Vicar Builders v. ELA et. al., supra*; *Jaap Corp. v. Depto. Estado et al., supra*; *ALCO Corp. v. Mun. De Toa Alta*, 183 DPR 530 (2011); *CMI Hospital v. Depto. Salud,* 171 DPR 313 (2007); *Ocasio v. Alcalde Mun. de Maunabo*, 121 DPR 37 (1988).

En consideración al interés de velar por la pulcritud en la contratación con entidades gubernamentales el Tribunal Supremo ha favorecido "la aplicación de una normativa restrictiva en cuanto a los contratos entre un ente privado y el gobierno". *Vicar Builders v. ELA et. al., supra.* Véase, además, *Fernández & Gutiérrez v. Mun. San Juan, supra*, a la pág. 829. Además, cuando se trata de contratos con entidades gubernamentales, regidos por la Ley de Municipios Autónomos, se considera primero la validez del acuerdo a la luz del estatuto mencionado, en lugar de acudir de lleno a la teoría general de contratos. *Cordero Véles v. Mun. de Guánica*, 170 DPR 237 (2007).

Al interpretar las disposiciones anteriores, nuestro máximo foro judicial ha resuelto que el requisito de que los contratos suscritos con los Municipios sean reducidos a escrito es de carácter sustantivo debido a su directa relación con la sana administración pública. Es decir, el requisito de contrato escrito sirve como mecanismo profiláctico para evitar pagos y reclamaciones fraudulentas e ilegales. *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994 (2009); *Colón Colón v. Mun. de Arecibo*, 170 DPR 718 (2007). Así, el requisito de que el contrato conste por escrito es de carácter constitutivo e indispensable para la eficacia de las obligaciones contraídas. *Fernández & Gutiérrez v. Mun. San Juan, supra*, a la pág. 830; *Colón Colón v. Mun. de Arecibo, supra*, a la pág. 730.

Cabe destacar que un municipio viene obligado a identificar los fondos de donde se van a pagar los servicios o bienes que se adquieren. *Id.*, a la pág. 726. La facultad de desembolsar los

fondos públicos para el pago de las obligaciones contraídas está supeditadas al cumplimiento de los procedimientos establecidos en ley y la jurisprudencia interpretativa. *Id.*, a la pág. 725.

En vista de ello, se ha reiterado que el contratista municipal debe ser diligente en su relación con el Municipio y asumir un rol más activo para asegurar que las obligaciones contraídas sean reducidas a un contrato escrito antes de ofrecer sus servicios pues, de lo contrario, asumirá la responsabilidad por sus pérdidas. *Íd.*; *Quest Diagnostics v. Mun. San Juan, supra*; *CMI Hospital v. Depto. Salud, supra.* "Por eso, para evitar situaciones irregulares en las que el Estado termine lucrándose injustificadamente, las partes deberán ser meticulosas al otorgar sus contratos". *Vicar Builders v. ELA et. al., supra.*

**D.**

La antigua Ley Núm. 21-2016, también conocida como la Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico, 3 LPRA sec. 9281 *et seq.*, (Ley de Moratria) se creó para declarar un estado de emergencia fiscal. En el Capítulo 2, facultaba al Gobernador a declarar una moratoria temporera para los pagos del BGF o las instrumentalidades gubernamentales de Puerto Rico. Además, la legislación autorizaba al Gobernador a tomar cualquier medida razonable para que el BGF continuara realizando sus operaciones. Esto incluía la limitación de cualquier pago de cualquier obligación para manejar las necesidades de liquidez, mediante la suspensión de cualquier obligación garantizada por el banco. A raíz de ello, el BGF no podría desembolsar préstamo alguno, salvo previa aprobación del Gobernador. Ahora bien, se debía tomar en consideración los fondos disponibles y la necesidad de sufragar la prestación de servicios esenciales.

Posteriormente, el 8 de abril de 2016, el Gobernador promulgó la Orden Ejecutiva 2016-010 en virtud del Art. 201 de la Ley de Moratoria. Conforme al Art. 203, instruyó al BGF a honrar sólo las solicitudes de retiros, pagos y transferencias, que sean razonables y necesarias para el pago de servicios esenciales. Específicamente, se requería que los municipios certificaran que la solicitud de retiro, pago o transferencias de los fondos solicitados eran necesarios para la prestación de servicios esenciales en el curso ordinario y, basados en las necesidades de flujo del depositante, no proyecta una fuente alterna de fondos disponibles para el pago de dichos servicios esenciales. Incluso, la Orden Ejecutiva impuso un limite semanal para la cantidad total de retiros, pagos y transferencias con la finalidad de preservar la liquidez. Por último, decretó la suspensión temporal del desembolso de todos los préstamos y adelantos del BGF y del pago de todas las obligaciones garantizadas por este.

## III.

En el caso ante nuestra consideración, López Construction nos solicita que revoquemos la Sentencia emitida por el TPI en la que declara No Ha Lugar a la demanda presentada por éstos. El Apelante señala la comisión de (3) errores. En su primer error, alega que el foro de instancia erró en su apreciación a la prueba al momento de fundamentar sus determinaciones de hechos. Veamos.

El Tribunal Supremo ha resuelto que, en ausencia de error, perjuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, apreciación a la prueba o las adjudicaciones de credibilidad efectuadas por los foros primarios. Las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida

surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).

El planteamiento de error presentado nos obliga a analizar las determinaciones de hechos señaladas por el Apelante. Su primera observación es referente a la determinación de hechos núm. 41, que lee como sigue:

> *El 24 de julio de 2017 las partes firmaron una enmienda al contrato original, mediante la cual identificaron una nueva fuente de ingresos que le permite al Municipio financiar el proyecto en su totalidad. (Exhibit I-K de las partes.).*

El Apelante argumenta que este hecho es incorrecto e insostenible a la luz del expediente ante nos. Especificó que, del testimonio de la Directora de Finanzas del Municipio al momento de suscribirse la enmienda, no contaban con los fondos necesarios. La prueba que obra en el expediente demuestra que este hecho se limita a recoger el lenguaje contenido en la Enmienda K.[4] Por lo que no tiene méritos el argumento de López Construction.

En cuanto a la determinación de hechos núm. 43, el Apelante arguye que en su testimonio la Directora de Finanzas aclaró que López Construction no abandonó la obra para la cual fue contratado. Conforme a la Sentencia emitida por el TPI, la determinación de hechos impugnada dispone:

> *No obstante, la Sra. Mariluz Maldonado Ortiz, sostuvo que López Brothers Construction, Inc. no culminó la obra para la cual fue contratado.*

A esos efectos, la determinación del TPI sostiene que el contratista no culminó la obra para la cual fue contratado. Lo cierto es que la argumentación del Apelante, está dirigida a un elemento que no está contemplado en la determinación de hechos que se intenta impugnar. Pues, la determinación de hechos se limita a establecer que la obra no se culminó, nada menciona

---

[4] Véase Ap. 18 – Exhibit I K – Enmienda K.

sobre un abandono.  Por tal motivo, se sostiene la determinación del TPI.

La siguiente determinación de hechos cuestionada establece que:

> *De conformidad con el testimonio del Ing. Rafael Zayas Rolón, Supervisor del Proyecto, quedó corroborado que la Junta de Subastas del Municipio de Barranquitas aprobó el plan de trabajo presentado por López Brothers Construction con las partidas a ser postergadas. Admitió que las partidas adicionales incluidas por el Municipio de Barranquitas no eran actividades esenciales de la construcción.*

Sobre la determinación de hechos núm. 11, López Construction discute que el plan de trabajo presentado por estos no es el mismo que posteriormente fue aprobado por la Junta de Subastas del Municipio.  Es nuestra apreciación que la Junta de Subastas aprobó en su mayoría las sugerencias realizadas por el Apelante, salvo tres (3) partidas que se determinaron que no eran esenciales.  A esos fines, se aclara que la Junta de Subastas del Municipio modificó el plan de trabajo presentado por López Construction.  Además, se adopta lo expresado por el ingeniero Zayas, referente a que una (1) de las tres (3) partidas que fueron añadidas a la lista de actividades postergadas, a su juicio era una esencial por motivos de seguridad.[5]

Cónsono con la discusión que precede, en la Sentencia se consignó que, conforme surgió del testimonio de la señora Yamilet Guzmán:

> *Mencionó que la Junta de Subastas acogió el plan propuesto por López Brothers.*

Cabe destacar que, del propio testimonio de la Sra. Guzmán, informó que esta no es su área.[6]  Recordemos que su puesto es Directora de Finanzas.  Por lo que, se sostiene la determinación redactada por el TPI.

---

[5] Véase Transcripción de la Prueba Oral, pág. 616, líneas 1-6.
[6] Véase Transcripción de la Prueba Oral, pág. 411, líneas 16-22.

El Apelante señala un error en la fecha de la determinación de hechos núm. 18. Según lo redactado por el TPI:

*Admitió [el Sr. López] que con fecha de 31 de marzo de 2016, el Ing. Juan H. Medina le envió una comunicación informándole que continuara con todas las actividades de la construcción postergadas.*

Conforme surge de la prueba que obra en el expediente, se aclara que la comunicación emitida por el ingeniero Juan H. Medina se envió el 31 de marzo de 2017.[7]

En cuanto a la determinación de hechos núm. 25, se dispone que:

*De conformidad con el testimonio de Yamilet Guzmán Cartagena quedó establecido que con fecha de 15 de junio de 2015, el BGF aprobó el préstamo para el proyecto de construcción.*

Según la comunicación recibida por el Municipio, el 12 de junio de 2015, el BGF aprobó el préstamo para la construcción de la obra y sus desembolsos estarían sujetos a la liquidez del banco.[8] Por otra parte, también obra en el expediente una comunicación emitida por el BGF, el 15 de octubre de 2015, donde se informa el desembolso del préstamo al Municipio de Barranquitas para la construcción de un parque de pelota.[9] Ante tal análisis, el foro primario no erró en su apreciación.

La determinación de hechos núm. 27, lee como sigue:

*Sostuvo que el 12 de abril de 2016 el BGF le notificó que congelarían los fondos del préstamo otorgado debido a la quiebra de dicha institución.*

El Apelante arguye que la comunicación fue cursada por la Oficina de Gerencia y Presupuesto (OGP), más no fue el BGF según se hizo constar en la Sentencia. No obstante, del testimonio de la Sra. Guzmán se desprende que advino en conocimiento de la situación mediante reuniones y comunicaciones telefónicas con el

---

[7] Véase Ap. 16 – Exhibit X – Carta de 31 de marzo de 2017.
[8] Véase Ap. 2 – Exhibit XXX – Carta de 12 de junio de 2015.
[9] Véase Ap. 3 – Exhibit XXIX – Carta de 15 de octubre de 2015.

BGF.[10] Posteriormente, el 12 de abril de 2016, conforme se desprende del testimonio, se le notificó mediante una carta dirigida a los municipios.[11]

En la Sentencia, la determinación de hechos núm. 31 dispone que:

> *Declaró además, que posteriormente consiguieron más de $1,000,000.00 de varias resoluciones de la Legislatura pero ya López Brothers se había ido del proyecto.*

La argumentación del Apelante sostiene que este hecho está incompleto, pues omite que este se retiró de la obra como consecuencia de la paralización tras el paso del Huracán María. Sin embargo, concluimos que este hecho no provoca una interpretación apartada a la realidad. Pues en efecto, al momento en el que se obtuvieron los fondos, López Construction no se encontraba laborando en el proyecto. Lo anterior es independientemente de la razón por la cual ya no se encontraban trabajando en la obra.

La determinación de hechos núm. 35 dispone que en el testimonio del Sr. Ernesto López:

> *Declaró además, que López Brothers Construction, Inc. trabajó en el proyecto hasta el 18 de septiembre de 2017 y que posteriormente no regresaron a trabajar más.*

El Apelante nuevamente insiste en que esta determinación de hechos es incompleta debido a que el contratista no regresó a las labores debido a la paralización del Huracán María. Además, apunta a la comunicación emitida por el Municipio, el 31 de enero de 2018, en la cual se informa que toda actividad de construcción queda suspendida hasta tanto se prepare un nuevo contrato. A pesar de ello, juzgamos que esta interpretación corresponde a lo

---

[10] Véase Transcripción de la Prueba Oral, página 374, líneas 13-24.
[11] Véase Transcripción de la Prueba Oral, página 1,225, líneas 15-25.

testificado por el señor Ernesto López en juicio.[12]   Analizado este extracto de su testimonio, quedó claro que al mencionar esta fecha hizo referencia al paso del Huracán María.

En la siguiente determinación de hechos, el TPI estableció que, conforme a lo declarado por la señora Guzmán:

> *Indicó que nunca recibió comunicación alguna de López Brothers querellándose por los pagos.*

El Apelante señala que, de la Minuta sobre la reunión del 24 de octubre de 2016, López Construction expresó su inconformidad con la falta de pago oportuno.   Conforme se desprende de la transcripción de la prueba oral, la manifestación de la Directora de las Finanzas corresponde a una reclamación sobre pagos divididos.[13]   Por lo que no existe un error en cuanto a esta determinación.

Por otro lado, la determinación de hechos núm. 55, establece que el señor Rubén Matos, Contador Público Autorizado:

> *Sostuvo que López Brothers Construction vino descapitalizándose desde 2013 en adelante, razón por la cual no pudo cumplir con su obligación de culminar el proyecto de construcción.*

En este caso, López Construction reitera su argumento referente a que la culminación de la obra respondió a la paralización de labores tras el paso del Huracán María.   Luego de analizada la transcripción de la prueba oral, concluimos que este hecho recopila lo testificado por el testigo durante la vista en su fondo.   Ello en vista de que en varias ocasiones el señor Rubén Matos explicó la situación económica del Apelante y sostuvo que su deterioro comenzó desde el año 2013.[14]   Además, indicó que

---

[12] Véase Transcripción de la Prueba Oral, pág. 713, líneas 5-19.
[13] Véase Transcripción de la Prueba Oral, pág. 546, líneas 7-12.
[14] Véase Transcripción de la Prueba Oral, página 951, líneas 15-23 y página 953, líneas 3-7.

esto provocaba la falta de liquidez de la compañía para poder llevar a cabo el proyecto.[15]

En síntesis, los señalamientos realizados por el Apelante son errores subsanables los cuales no afectan la determinación del TPI. Se hace constar que, de las determinaciones de hechos mencionadas por el Apelante, únicamente se alteran la determinación núm. 11 y 18. Específicamente, se enmienda la determinación de hechos núm. 11 a los fines de aclarar que se aprobó en su mayoría el plan de trabajo presentado por López Construction, con excepción de tres (3) partidas las cuales se determinó que no eran esenciales. En cuanto a la determinación de hechos núm.18 se enmienda para establecer que la fecha de la misiva fue en el año 2017, conforme surge de la comunicación enviada. El resto de las determinaciones de hechos se sostienen tal cual redactadas por el foro primario. Pues, a nuestro juicio, López Construction no pudo demostrar la existencia de un error manifiesto o fundamentar la existencia de pasión, prejuicio o parcialidad.

En su siguiente señalamiento de error, el Apelante arguye que erró el foro de instancia al aplicar la Ley de Moratoria y la situación del BGF para liberar al Municipio de su obligación contractual. López Construction sostiene que la precariedad del Banco no obligaba al Municipio a detener las labores del proyecto. Más aun, indica que la Ley de Moratoria no era aplicable a los municipios y, por tanto, no configuraba una forma de incumplir con lo pactado. Adelantamos que, no le asiste la razón.

La Ley de Moratoria se creó para declarar un estado de emergencia fiscal. Específicamente, esta ley facultaba al Gobernador a declarar una moratoria temporera para los pagos o

---

[15] Véase Transcripción de la Prueba Oral, página 955, líneas 24-25 y página 956, línea 1.

desembolsos realizados por el Banco Gubernamental de Fomento. Siendo así, mediante la OE-2016-010 se limitaron los desembolsos del banco únicamente a aquellos que correspondieran a los pagos de servicios esenciales. A raíz de ello, los municipios venían obligados a certificar que la solicitud de desembolsos o retiros eran necesarios para la prestación de servicios esenciales en el curso ordinario.

Esta situación provocó que el Municipio se viera obligado a postergar ciertas actividades que eran financiadas por el Banco Gubernamental de Fomento. Pues los fondos quedaban supeditados a la autorización del Gobernador hasta que transcurriera el periodo cubierto. Si bien es cierto que la declaración de emergencia era dirigida al BGF, no es menos cierto que el Municipio también quedó afectado por la legislación aprobada y los pronunciamientos posteriores. Pues en el contrato entre las partes se identificó que una de las partidas sería cubierta por el préstamo aprobado por el BGF. Por lo que, coincidimos con el foro de instancia al determinar que el Municipio actuó de manera prudente y razonable al reprogramar las actividades de construcción debido a la situación del BGF.

En el último señalamiento de error, el Apelante arguye que erró el foro primario al determinar que López Construction carecía de derecho al reclamar contra el Municipio incumplimiento de contrato, daños contractuales, negligencia y dolo.

Las acciones *ex contractu* se refieren a actos u omisiones voluntarios que conllevan la inobservancia de obligaciones previamente pactadas. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 909 (2012). En el incumplimiento de la obligación por culpa o negligencia no necesariamente acarrea un elemento de intención. Sino que el deudor incumple por falta de diligencia, más no por mala fe. *800 Ponce de León v. AIG, supra,* a las

págs.182-183. Por otro lado, el dolo consiste en la omisión consciente, intencionada y voluntaria de eludir el cumplimiento de la obligación con conocimiento de que se realiza un acto injusto. *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 668 (1997). En ese sentido, le corresponde la carga de la prueba a quien reclame una conducta dolosa.

En el caso que nos ocupa, el Apelante no pudo demostrar la intención de incumplimiento del Municipio. De la prueba desfilada se desprende que el Municipio sufrió problemas económicos debido a la situación precaria del BGF. Según indicamos anteriormente, el Municipio actuó de manera prudente y razonable al reprogramar ciertas obras hasta tanto contara con los fondos para cumplir con el pago de la obligación. Lo anterior quedó evidenciado mediante reubicación de fondos remanentes de diferentes resoluciones provenientes del fondo municipal.

El Apelante intenta establecer que a la fecha de la firma del contrato el Municipio no contaba con el préstamo de BGF. Ello en vista de la primera comunicación emitida, el 12 de junio de 2015, en la cual el BGF informa que se determinará en una fecha posterior si el préstamo se podría desembolsar luego de considerar el estado de liquidez del banco. Sin embargo, pasa por desapercibido que el 15 de octubre de 2015, también se recibió una misiva en la que se indicó que el 7 de octubre de 2015, se desembolsaron los fondos en una cuenta del Municipio para la construcción del parque de pelota. Sin embargo, luego de iniciadas las labores de construcción los mismos fueron congelados y los desembolsos fueron supeditados a la aprobación del Gobernador debido a la realidad fiscal del país.

Por otro lado, López Construction argumenta que, si se hubiera culminado la obra, el Municipio no hubiera contado con los fondos para realizar el pago total de la misma. No le asiste la

razón.  Analizada la totalidad de la transcripción de la prueba oral, podemos colegir que la intención del Municipio fue clara, postergar las actividades de construcción con el objetivo de pagarle al contratista por las labores realizadas.  Precisamente, la identificación de obras esenciales era para pagar con los fondos municipales aquellas obras que fueran necesarias dentro del presupuesto con el que contaba el Municipio mediante distintas Resoluciones Conjuntas.  Cabe destacar que, el Apelante tampoco culminó la obra debido al vencimiento del término del contrato luego del paso del Huracán María.  Lo cierto es que, a la fecha de la Sentencia, el Municipio realizó todos los pagos de las certificaciones emitidas y facturadas.  Así las cosas, reiteramos que el foro primario no erró en su determinación.

En lo que respecta a la solicitud del informe de obras pendientes solicitado por el Municipio, López Construction argumenta que esto no figuraba en los términos del contrato.  Más aun, indica que el ingeniero Edwin Torres Jiménez, laboró para su compañía durante el periodo que estos se encontraban realizando las obras de construcción. Posteriormente, el ingeniero fue contratado por el Municipio.  Por ende, sostiene que el Municipio contaba con conocimiento directo y completo del estado de las obras a través de este funcionario.  No obstante, esta actuación es incorrecta. El Apelante no puede pretender trasladar su responsabilidad como patrono a un empleado. Por lo que, mantenemos la conclusión del foro de instancia al determinar que esto constituyó un acto de mala fe.

En síntesis, sostenemos la adjudicación del TPI al declarar No Ha Lugar la Demanda presentada por López Construction, en vista de que el Municipio actuó de manera razonable y conforme a la situación financiera a la que se enfrentaba el BGF.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte íntegra de esta Sentencia, modificamos el dictamen emitido por el Tribunal de Primera Instancia, Sala Superior de Comerío a los fines de aclarar las determinaciones de hechos núm. 11 y núm. 18. Así modificada, confirmamos la decisión apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones